19-111856

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MINNESOTA**

---

In Re: Case No. 19-41577 KHS
Chapter 7

Diane L. Rose
James D. Rose

Debtors.

---

**NOTICE OF HEARING AND MOTION**
**FOR RELIEF FROM STAY**

TO: The Debtors and other entities specified in Local Rule 9013-3(a).

1. Specialized Loan Servicing, LLC (hereinafter “Movant”), by its undersigned attorneys, moves the Court for relief requested below and gives Notice of Hearing.

2. The Court will hold a Hearing on this motion at 1:30 p.m. on November 7, 2019, in Courtroom No. 8 West, at U.S. Courthouse, 8th Floor, 300 South Fourth St., Minneapolis, MN 55415.

3. Any response to this Motion must be filed and delivered no later than Friday November 1, 2019, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1. This proceeding is a core proceeding.

5. The petition commencing this case was filed on May 24, 2019.

6. This Motion arises under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001. This Motion is filed pursuant to Fed. R. Bankr. P. 9014 and Local Rules 4001-1 and 9013-1 through 9019-3.

7. Movant Requests Relief from the automatic stay with respect to real property of subject to a mortgage lien, effective immediately, notwithstanding Fed. R. Bankr. P. 4001(a)(3).

8. The Debtors executed a promissory note in the original amount of $291,450.00 dated December 19, 2013 (hereinafter the “Note” or “Debt Agreement”).

9. The Note is either made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent.

10. The Note is secured by a valid, perfected mortgage lien (hereinafter the “Mortgage”), executed by Diane L. Rose and James D. Rose, encumbering real property located at 840 Deerwood Drive, Chaska, MN 55318 and legally described as:

Lot 5, Block 1, Deerwood Estates, Carver County, Minnesota

11. Movant is the holder of the Mortgage pursuant to assignment(s) of mortgage and is entitled to enforce the terms thereof.

12. The Note and Mortgage provide that failure to make the payments due under the Note are a condition of default, the occurrence of which gives Movant the right to proceed with foreclosure of the Mortgage.

13. The Debtors signed a Loan Modification Agreement on October 24, 2018.

14. The Debtors have failed to make the promised payments with respect to the Note and Mortgage and are therefore in default.

15. As of September 30, 2019, the total amount of the Mortgage default is $13,001.44, which is detailed on Local Form 4001-1.

16. As of September 30, 2019, the total balance owed under the Mortgage was $240,392.58.

17. The current tax assessed value of the property is $471,500.00. The Debtors estimated the value of the property as $536,000.00. Based upon available information, the Movant adopts $471,500.00 as the estimated fair market value of the property.

18. The property is subject to a junior mortgage in favor of U.S. Bank for $130,863.72, and a junior mortgage in favor of Wells Fargo Bank, N.A. for $52,408.61.

19. In order to protect its interest in the secured property of the Debtors, the Movant must pursue its remedies to foreclose under Minnesota law. Movant has and will incur legal fees and costs to protect and enforce its rights in the property.

20.     Cause exists for the Court to vacate the automatic stay imposed by 11 U.S.C. § 362(a), because the Debtors have failed to provide Movant with adequate protection. Further, Movant is entitled to termination of the automatic stay because there is insufficient equity in the property, nor is the property is necessary to an effective reorganization.

21.     **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

WHEREFORE, pursuant to 11 U.S.C. § 362(d), Specialized Loan Servicing, LLC, respectfully moves the Court for an Order:

1.     Granting relief from the automatic stay imposed by 11 U.S.C. § 362(a).

2.     Determining that the 14 day stay under Fed. R. Bankr. P. 4001(a)(3) be waived so that this order for relief is effective immediately upon entry.

3.     For such other and further relief as the Court finds equitable and just.


Dated:  October 15, 2019


Signed: */s/ Joseph M. Rossman*
James A. Dohnalek, Jr. – 0399206
Joseph M. Rossman - 0397070
jrossman@logs.com
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road, Suite 200
Burnsville, MN 55337
(952) 831-4060

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 19-41577 KHS** |
| **Diane L. Rose** | § | |
| **James D. Rose** | § | **CHAPTER 7** |
| | § | |
| | § | |
| **DEBTORS** | § | |
| | § | |
| | § | |
| **Specialized Loan Servicing, LLC** | § | |
| | § | |
| **MOVANT** | § | |
| | § | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, Shane Ellis, hereby state the following:

1. I am a duly authorized representative of Specialized Loan Servicing, LLC, ("Movant") and its successors and assigns, and hereby make this Affidavit in such capacity. Specialized Loan Servicing, LLC, is organized and existing under the laws of the United States, and is authorized to sue on its own behalf.

2. I am a custodian of records for Movant. In the course of my employment, I have become familiar with the manner and method in which Movant maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

3. I have reviewed the books and records related to the Note secured by Mortgage of even date therewith covering real property located at 840 Deerwood Drive, Chaska, MN 55318, and legally described as Lot 5, Block 1, Deerwood Estates, Carver County, Minnesota. A true and correct copy of the Note is attached as Exhibit A. A true and correct copy of the Mortgage is attached as Exhibit B.

4. The Note, in the original principal amount of $291,450.00, dated December 19, 2013, was executed by the original mortgagor James D Rose and Diane L Rose, husband and wife, to Wells Fargo Bank, N.A. The Mortgage, in the original principal amount of $291,450.00, dated December 19, 2013, was executed by the original mortgagor James D Rose and Diane L Rose, husband and wife, to Wells Fargo Bank, N.A.

5. The Debtors executed a Loan Modification Agreement on October 24, 2018. Attached as Exhibit C is a copy of the Loan Modification Agreement.

6. Said Mortgage and Note were subsequently assigned, transferred or acquired by Specialized Loan Servicing, LLC. A copy of the Assignment is attached as Exhibit D.

7. Debtors are in default on their obligations to Movant in that Debtors have failed to make their installment payments when due and owing pursuant to the terms of the above-described Note and Mortgage.

8. As of September 30, 2019, the total indebtedness was $240,392.58. Debtors are due 8 contractual payments (February 1, 2019 through August 1, 2019 @ $1,628.57 each and September 1, 2019 @ $1,647.43), less suspense of $45.98,

totaling $13,001.44. The amount of the current monthly Mortgage installment payment is $1,647.43.

9. By failing to make the regular monthly installment payments due pursuant to the Note and Mortgage, Debtors have not provided adequate protection to Movant.

10. The current tax-assessed value of the property is $471,500.00, which Movant adopts as the estimated fair market value of the property. Attached as Exhibit E is a true and correct copy of the Carver County web page.

11. As of September 30, 2019, the total indebtedness to Movant was $240,392.58. The fair market value of the Property as averred by the Debtors is approximately $536,000.00. Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are: (i) Movant $240,392.58; (ii) U.S. Bank $130,863.72; (iii) Wells Fargo Bank, N.A. $52,408.61.

12. Attached as Exhibit F is a true and correct copy of the loan history beginning on the date of default applicable to this Motion provided on Local Form 4001-1.

1 declare that the foregoing facts are true and correct to the best of my knowledge and belief.

FURTHER AFFlANT SAYETH NAUGHT.

Our File No. 19-111856
Court File No. **19-41577 KHS**

By: ______________________

Print Name: Shane Ellis

Title: Assistant Vice President

SUBSCRIBED AND SWORN TO before me by Shane Ellis on this the 10 day of Oct, 20 19, to certify which witness my hand and seal of office.

SHARON LAWFIELD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184038795
MY COMMISSION EXPIRES 10/01/2022

______________________
Notary Public in and for the

State of Colorado

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**
**MINNEAPOLIS DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO. 19-41577** |
| **JAMES D. ROSE,** | **CHAPTER 7** |
| **DIANE L. ROSE,** | |
| **DEBTOR(S)** | |

## RIGHT TO FORECLOSE STATEMENT

Specialized Loan Servicing, LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage/Deed of Trust.

Document Page 9 of 50

# Note

DECEMBER 19, 2013
[Date] [City] [State]

840 DEERWOOD DRIVE, CHASKA, MN 55318

[Property Address]

## 1. Borrower's Promise to Pay

In return for a loan that I have received, I promise to pay U.S. $ *****291,450.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. Interest

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. Payments

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on FEBRUARY 01, 2014 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2029 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ *******2,119.49 .

## 4. Borrower's Right to Prepay

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
NMFL# 3200 (CNOT) Rev. 9/2013

Form 3200 1/01
VMP5N (1302).00
Page 1 of 3

EXHIBIT A

## 5. Loan Charges

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. Borrower's Failure to Pay as Required

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. Giving of Notices

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. Obligations of Persons Under this Note

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________ (Seal) -Borrower
JAMES D ROSE

_______________ (Seal) -Borrower
DIANE L ROSE

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization **WELLS FARGO BANK, N.A.**
NMLSR ID **399801**
Loan originator **LONNIE HOVE**
NMLSR ID **400289**

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY ______________________
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT

0012

Mortgage Registration Tax of $ 670.34
paid on January 7, 2014 (Date)
Conservation Fee Paid
Laurie Davies, Auditor-Treasurer
By Jennifer Sanchez (Deputy)

Document No.
A 589351

OFFICE OF THE
COUNTY RECORDER
CARVER COUNTY, MINNESOTA
Receipt # [redacted]

Certified Recorded on January 07, 2014 1:17 PM

Fee: $46.00

589351

Mark Lundgren
County Recorder

[Space Above This Line For Recording Data]

# MORTGAGE

Return To:
FINAL DOCS N0012-01B

6200 PARK AVENUE
DES MOINES, IA 50321

Return to:
Liberty Title, Inc.
17267 Yale Street NW
Lower Level
Elk River, MN 55330

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated DECEMBER 19, 2013 , together with all Riders to this document.

EXHIBIT B

**(B) "Borrower"** is JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES .
Lender's address is 101 NORTH PHILLIPS AVENUE, SIOUX FALLS, SD 57104

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated DECEMBER 19, 2013 .
The Note states that Borrower owes Lender TWO HUNDRED NINETY ONE THOUSAND FOUR HUNDRED FIFTY AND 00/100 Dollars
(U.S. $ *******291,450.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2029 .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of CARVER [Name of Recording Jurisdiction] :

SEE ATTACHED LEGAL DESCRIPTION

TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758

Parcel ID Number: which currently has the address of
840 DEERWOOD DRIVE [Street]
CHASKA [City], Minnesota 55318 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

 

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and



Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal

owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security

Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________ (Seal)
JAMES D ROSE -Borrower

_______________ (Seal)
DIANE L ROSE -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP -6(MN) (1302).00 Page 14 of 15 Form 3024 1/01

STATE OF MINNESOTA, Hennepin County ss:

On this 19th day of December, 2013, before me appeared JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE

to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

Notary Public
My Commission Expires:

This instrument was drafted by:
WELLS FARGO BANK, N.A.
4143 121ST ST, 1ST FLOOR, URBANDALE, IA
503232310

Tax statements for the real property described in this instrument should be sent to:
WELLS FARGO HOME MORTGAGE
P.O. BOX 11758, NEWARK, NJ 071014758

Loan origination organization WELLS FARGO BANK, N.A.
NMLSR ID 399801
Loan originator LONNIE HOVE
NMLSR ID 400289

**LEGAL DESCRIPTION**

Lot 5, Block 1, Deerwood Estates,

Carver County, Minnesota

FILE NUMBER [redacted]

[Space Above This Line For Recording Data]

**Original Principal Amount $291,450.00**
**Unpaid Principal Amount $224,734.57**
**New Principal Amount $228,434.27**
**Total Cap Amount $3,699.70**

**Transfer Certificate Title Number:**

# Loan Modification Agreement

Executed on this day: **October 5, 2018**
Borrower ("I"):[1] **JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE**
Borrower Mailing Address: **840 DEERWOOD DRIVE, CHASKA, MN 55318-1200**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **3476 STATEVIEW BLVD, MAC#X7801-03K, FORT MILL, SC 29715**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **December 19, 2013** and Note ("Note"): **December 19, 2013**
Property Address ("Property"): **840 DEERWOOD DRIVE, CHASKA, MN 55318-1200**

Legal Description:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Mortgage made by **JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE** to **WELLS FARGO BANK, N.A.** for **$291,450.00** and interest, dated **December 19, 2013** and recorded on **January 7, 2014** in **Instrument No.CRFN A589351** of the Official Records of **CARVER** County, **MINNESOTA**

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

EXHIBIT C

This Loan Modification Agreement ("Agreement") is made on **October 5, 2018** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

**1. Borrower Representations.**

I certify, represent to Lender and agree:

A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

D. I have made or will make all payments required within this modification process;

E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

**2. The Modification.**

A. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be **$228,434.27** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of **3.750%** will begin to accrue on the New Principal Balance as of **October 1, 2018** and the first new monthly payment on the New Principal Balance will be due on **November 1, 2018**. Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 3.750% | 10/01/2018 | $919.51 | $709.06 | $1,628.57 | 11/01/2018 |

***This includes an escrow shortage amount to be paid overthe first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

**3. Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **May 1, 2018** to **November 1, 2018**. The first modified contractual due date is **November 1, 2018**.

B. The maturity date is **October 1, 2058**.

C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$0.00**.

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. **$0.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$211.94**.

G. The amount of interest to be included (capitalized) will be U.S. **$3,699.70**.

H. The amount of the Escrow Advance to be capitalized will be U.S. **$0.00**.

**4. Additional Agreements.**

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an Agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. ***Exception:*** In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any

or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **October 1, 2018**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by **October 26, 2018**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

[signature] (Seal) 10/24/2018
Borrower: **JAMES D. ROSE** Date

[signature] (Seal) 10/24/2018
Borrower: **DIANE L. ROSE** Date

*[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]*

**ACKNOWLEDGMENT**

State of Minnesota §
County of Carver §
§

This instrument was acknowledged before me on 10/24/2018 by **JAMES D. ROSE, HUSBAND, WIFE, DIANE L. ROSE, HUSBAND AND WIFE.**

LINDSEY J CHRISTENSEN
Notary Public
State of Minnesota
My Commission Expires
January 31, 2023

(Seal)

Signature of Notarial Officer

Lindsey Christensen
Printed Name

Notary
Title or Rank

My Commission Expires: 1/31/2123

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: _______________ -Lender **Jeffrey Rothbauer Vice President Loan Documentation**

11/2/18
Date of Lender's Signature

**ACKNOWLEDGMENT**

State of MN §
County of Dakota §
§

This instrument was acknowledged before me on 11-2-18 by

as **Jeffrey Rothbauer Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.**.

_______________
Signature of Notarial Officer

Muna Mohamud Fareh
Printed Name

MUNA MOHAMUD FAREH
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/19

Notary Public
Title or Rank

Serial Number, if any: N/A

(Seal) My Commission Expires: 01/31/2019

*[Space Below this Line for Recording & Drafted By Information]*

**After recording please mail to:**
**SERVICELINK**
**LOAN MODIFICATION SOLUTIONS**
**3220 EL CAMINO REAL**
**IRVINE, CA 92602**

**This instrument was drafted by:**
**WELLS FARGO BANK, N.A**
**KAYLA CONOVER**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

**EXHIBIT A**

**BORROWER(S): JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

**STATE OF MINNESOTA, COUNTY OF CARVER, AND DESCRIBED AS FOLLOWS:**

**REAL PROPERTY IS CARVER COUNTY, MINNESOTA, DESCRIBED AS FOLLOWS:**

**LOT 5, BLOCK 1, DEERWOOD ESTATES**

**THE SELLER CERTIFIES THAT THE SELLER DOES NOT KNOW OF ANY WELLS ON THE DESCRIBED PROPERTY.**

**Parcel ID Number: 30.1400050**
**ALSO KNOWN AS: 840 DEERWOOD DRIVE, CHASKA, MN 55318-1200**

***Send All Notices to Assignee***

RECORDING REQUESTED AND PREPARED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**EAGAN, MN 55121**
**THOMAS ERICKSON**

AND WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD #200**
**MAC: N9289-018**
**EAGAN, MN 55121-4400**
**ATTN: ASSIGNMENT TEAM**

Document #: A681117

Date: 08-07-2019 Time: 09:31 AM Pages: 1
Recording Fee: $46.00

Paid on 08-07-2019
County: Carver State: MN
Requesting Party: WELLS FARGO BANK, N.A.
Kaaren Lewis
County Recorder

## ASSIGNMENT OF MORTGAGE (ABSTRACT)

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A.** , **1 HOME CAMPUS , DES MOINES, IA 50328** , by these presents does convey, assign, transfer and set over to: **SPECIALIZED LOAN SERVICING LLC , 8742 LUCENT BLVD SUITE 300, HIGHLANDS RANCH, CO 80129** , the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$291450.00** is recorded in the State of **MINNESOTA** , County of **Carver** Official Records, dated **12/19/2013** and recorded on **01/07/2014** , as Instrument No. **A589351**
Original Mortgagor: **JAMES D ROSE AND DIANE L ROSE, HUSBAND AND WIFE**
Original Mortgagee: **WELLS FARGO BANK, N.A.**
Property Address: **840 DEERWOOD DRIVE CHASKA, MN 55318**
Date: **08/06/2019**

**WELLS FARGO BANK, N.A.**
By:

May Nhia Vang

MAY NHIA VANG, Vice President Loan Documentation

STATE OF MN
COUNTY OF Dakota } s.s.

On **08/06/2019** before me, **JENNIFER RAE ANDERSON** , a Notary Public, personally appeared **MAY NHIA VANG** , **Vice President Loan Documentation** of **WELLS FARGO BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JR Anderson

JENNIFER RAE ANDERSON, Notary Public
Commission #: **20506727**
My Commission Expires: **01/31/2020**

JENNIFER RAE ANDERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

eRecord

EXHIBIT D

Carver County
Property Tax Department
600 East 4th Street, P.O. Box 69
Chaska, MN 55318-0069
952-361-1910 • www.co.carver.mn.us

# 2019 Property Tax Statement

For the following visit our website at www.co.carver.mn.us
- Pay your taxes online
- Sign up for our Tax Payment Reminder
- Print additional copies of your Tax Statement

Property ID #: 30.1400050

Taxpayer: JAMES D & DIANE L ROSE
840 DEERWOOD DR
CHASKA MN 55318-1200

## VALUES AND CLASSIFICATION

| | Taxes Payable Year: | 2018 | 2019 |
|---|---|---|---|
| | Estimated Market Value: | 457,800 | 471,500 |
| Step 1 | Homestead Exclusion: | | |
| | Taxable Market Value: | 457,800 | 471,500 |
| | New Improvements/ Expired Exclusions: | | |
| | Property Classification: | Res Hstd | Res Hstd |

Step 2

**PROPOSED TAX**
$5,978.00

Step 3

**PROPERTY TAX STATEMENT**

| | | |
|---|---|---|
| First half taxes due: | May 15 | 3,010.00 |
| Second half taxes due: | October 15 | 3,010.00 |
| Total Taxes Due in 2019: | | 6,020.00 |

## $$$ REFUNDS?

*You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.*

Bill#

Property Address:
840 DEERWOOD DR
CHASKA MN 55318-1200

Property Description:
Section 33 Township 116 Range 023
DEERWOOD ESTATES Lot 005 Block 001

Tax Detail for Your Property:

| Taxes Payable Year: | | | 2018 | 2019 |
|---|---|---|---|---|
| 1. Use this amount on Form M1PR to see if you are eligible for a property tax refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. ☐ | | | | 5,987.00 |
| 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. | | | 5,882.00 | |
| **Tax and Credits** | 3. Property taxes before credits | | 5,882.00 | 5,987.00 |
| | 4. Credits that reduce property taxes | A. Agricultural market value credits | | |
| | | B. Other Credits | | |
| | **5. Property taxes after credits** | | 5,882.00 | 5,987.00 |
| **Property Tax by Jurisdiction** | 6. County | A. CARVER COUNTY | 1,714.58 | 1,719.87 |
| | | B. CO RAIL AUTHORITY | 5.23 | 4.93 |
| | 7. City or Town CITY OF CHASKA | | 1,246.78 | 1,305.00 |
| | 8. State General Tax | | | |
| | 9. School District SD 0112 Eastern Carver Cnty | A. Voter Approved Levies | 1,841.96 | 1,913.81 |
| | | B. Other Local Levies | 764.46 | 733.34 |
| | 10. Special Taxing Districts | A. Metro Council | 37.86 | 30.66 |
| | | B. Metro Mosquito Control | 20.42 | 19.93 |
| | | C. Metro Transit District | 62.55 | 68.54 |
| | | D. Carver County CDA | 75.08 | 76.65 |
| | | E. Watershed | 44.26 | 43.71 |
| | | F. City HRA/EDA | 68.82 | 70.56 |
| | 11. Non-school voter approved referenda levies | | | |
| | 12. Total property tax before special assessments | | 5,882.00 | 5,987.00 |
| 13. Special Assessments | Interest: | Principal: 33.00 | 30.00 | 33.00 |
| **14. TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS** | | | **5,912.00** | **6,020.00** |

Line 13 Special Assessment Detail:

| | |
|---|---|
| HAZ & SOLID WASTE FEE RES/AG | 33.00 |

Principal: 33.00
Interest:

---

## 2nd HALF PAYMENT STUB - PAYABLE 2019

**2**

PLEASE INDICATE YOUR ADDRESS CORRECTION ON REVERSE SIDE OF THIS PAYMENT STUB.
**Property ID#: 30.1400050**
OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID BY ESCROW COMPANY WELLS FARGO RE TAX SERVICE

To pay online go to www.co.carver.mn.us
The online payment feature is available for a current year tax payment. Delinquent payments cannot be paid online.

**TO AVOID PENALTY PAY ON OR BEFORE: October 15**

| SECOND 1/2 TAX AMOUNT DUE: | 3,010.00 |
|---|---|

DETACH HERE AND RETURN THIS STUB WITH YOUR SECOND HALF PAYMENT

**Bill #:**

**Taxpayer:**
JAMES D & DIANE L ROSE
840 DEERWOOD DR
CHASKA MN 55318-1200

Make checks payable to and remit to:
**Carver County
P.O. Box 69
Chaska, MN 55318-0069**

Your cancelled check is proof of payment. Please write your Property ID # on your check. Postdated checks are not held. Only official U.S. Postmark determines payment mail date. No receipt sent unless requested and is void until check is honored. Manufactured Home taxes of $50.00 or less and Real Estate taxes of $100.00 or less must be paid in full. If you pay your taxes late, you will be charged a penalty. See back for details.

---

## 1st HALF PAYMENT STUB - PAYABLE 2019

**1**

PLEASE INDICATE YOUR ADDRESS CORRECTION ON REVERSE SIDE OF THIS PAYMENT STUB.
**Property ID#: 30.1400050**
OUR RECORDS INDICATE THAT YOUR TAXES ARE BEING PAID BY ESCROW COMPANY WELLS FARGO RE TAX SERVICE

To pay online go to www.co.carver.mn.us
The online payment feature is available for a current year tax payment. Delinquent payments cannot be paid online.

**TO AVOID PENALTY PAY ON OR BEFORE: May 15**

| FULL TAX AMOUNT: | 6,020.00 |
|---|---|
| FIRST 1/2 TAX AMOUNT DUE: | 3,010.00 |

DETACH HERE AND RETURN THIS STUB WITH YOUR FIRST HALF PAYMENT

**Bill #:**

**Taxpayer:**
JAMES D & DIANE L ROSE
840 DEERWOOD DR
CHASKA MN 55318-1200

Make checks payable to and remit to:
**Carver County
P.O. Box 69
Chaska, MN 55318-0069**



Your cancelled check is proof of payment. Please write your Property ID # on your check. Postdated checks are not held. Only official U.S. Postmark determines payment mail date. No receipt sent unless requested and is void until check is honored. Manufactured Home taxes of $50.00 or less and Real Estate taxes of $100.00 or less must be paid in full. If you pay your taxes late, you will be charged a penalty. See back for details.

EXHIBIT E

**Local Form 4001-1**

**Loan History**

**Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.**

| | CHARGES | | | | | |
|---|---|---|---|---|---|---|
| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
| 11/1/2018 | | $919.51 | $709.06 | | | |
| 11/5/2018 | $1,628.57 | | | | | |
| 12/1/2018 | | $919.51 | $709.06 | | | |
| 1/1/2019 | | $919.51 | $709.06 | | | |
| 2/1/2019 | | $919.51 | $709.06 | | | |
| 2/19/2019 | $3,303.12 | | | | | |
| 3/1/2019 | | $919.51 | $709.06 | | | |
| 4/1/2019 | | $919.51 | $709.06 | | | |
| 5/1/2019 | | $919.51 | $709.06 | | | |
| 6/1/2019 | | $919.51 | $709.06 | | | |
| 7/1/2019 | | $919.51 | $709.06 | | | |
| 8/1/2019 | | $919.51 | $709.06 | | | |
| 9/1/2019 | | $919.51 | $727.92 | | | |
| | | | | | | |
| Total | $4,931.69 | $10,114.61 | $7,818.52 | $0.00 | $0.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

| | |
|---|---|
| Attorneys fees and filing fee for the motion, if allowed under note and/or mortgage and sought by Movant to resolve motion | $0.00 |
| Current Default Amount Claimed in the Motion | $13,001.44 |
| Escrow Balance (amounts held for payment of taxes, insurance, etc.) | $0.00 |
| Suspense Account Balance (amount of unapplied payments) | $45.98 |

EXHIBIT F

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MINNESOTA**

---

In Re:

Case No. 19-41577 KHS
Chapter 7

**Diane L. Rose**
**James D. Rose**

Debtors.

---

## MEMORANDUM OF LAW

Specialized Loan Servicing, LLC ("Movant"), submits this memorandum of law in support of its Motion for Relief from the stay in the above-entitled matter.

## FACTS

On December 19, 2013, Debtors made, executed, and delivered a Promissory Note to Wells Fargo Bank, N.A. for $291,450.00 (“Note”), which is secured by a Mortgage dated December 19, 2013, and recorded January 7, 2014, in Carver County as Document Number A589351, as modified by a Loan Modification Agreement signed on October 24, 2018. Said Mortgage was executed by Debtors. The Mortgage has been assigned to Movant via assignment of mortgage. The mortgage encumbers real property at 840 Deerwood Drive, Chaska, MN 55318.

The Debtors filed a petition under Chapter 7 of Title 11 of the U.S. Code, listing real property subject to a security interest held by the Movant in Schedule D. The

Debtors in this case have failed to make the contractual payments required by the Note and Mortgage, as evidenced by Local Form 4001-1.

## ARGUMENT

### I. THE MOVANT HAS STANDING TO BRING THIS MOTION FOR RELIEF FROM THE STAY TO FORECLOSE THE MORTGAGE

A "party in interest" has standing to make a motion for relief from the stay, after notice and hearing. 11 U.S.C. § 362 (d). The holder of a note and mortgage, or its authorized agent, has standing to bring a stay relief motion. *See, e.g., In re Jacobson,* 402 B.R. 359, 366 (Bankr. W.D. Wash. Mar. 6, 2009) (as modified Mar. 10, 2009). In the District of Minnesota, Local Bankruptcy Rule 4001-1 specifies the evidence that the movant must provide to the court in order to prove standing for a motion for relief from stay, including a copy of the note, copy of the mortgage recorded in the land records, any assignments if the movant is not the original mortgagee, and any other evidence that the movant has authority to make the motion. Loc. R. Bankr. P. 4001-1(b)(1). *See also* LRBP 90132(a); LRBP 9013-2(d).

Exhibits A through D submitted in support of this motion show the chain of title that gives Movant standing to seek relief from the automatic stay. The Note is made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent. The Mortgage was recorded in the county in which the property is located, and the Movant is the original mortgagee, the beneficiary, or the assignee of the Mortgage. The Movant has provided sufficient evidence to show that it is

a party entitled to enforce the terms of the Note and Mortgage, and likewise, that Movant has standing to bring this Motion for Relief.

## II. MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY "FOR CAUSE" UNDER 11 U.S.C. § 362(d)(1)

Section 362(d) of the Bankruptcy Code governs relief from the automatic stay. 11 U.S.C. § 362(d). Under Section 362(d)(1), relief from the automatic stay shall be granted upon request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party." 11 U.S.C. § 362(d)(1). Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) (internal citation omitted). A secured creditor's interest is not adequately protected where its collateral is depreciating in value. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 370 (1988). Other grounds for granting relief from the stay to the creditor "for cause" include that the debtor is not insuring the property or the debtor is failing to pay ongoing utilities, real estate taxes, or homeowners' association dues which lead to liens that affect the creditor's position. *See, e.g., In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012) (although Chapter 11 debtor was making regular mortgage payments, the creditor was not adequately protected and was thus entitled to stay relief where the debtor had failed to pay real estate taxes resulting in a superior tax lien); *In re Harwood Hideout, Inc.*, 2005 WL 894828 (Bankr. D. N.D. 2005) (mortgagee was entitled to relief from the stay unless debtor provided proof of insurance and cured any existing tax deficiencies). The burden

of proof is on the debtor to demonstrate lack of cause by showing that adequate protection has been provided to the creditor. 11 U.S.C. § 362(g)(2).

The Debtors have failed to make the contractual payments with respect to the Note and Mortgage and are therefore in default. *See* Exhibit F, Local Form 4001-1. The Debtors have not otherwise provided Movant with adequate protection of its interest in the subject property. Such circumstances constitute cause within the meaning of Section 362(d)(1), justifying relief from the stay.

## III. MOVANT IS ENTITLED TO RELIEF FROM THE STAY UNDER 11 U.S.C. § 362(d)(2) BECAUSE THERE IS INSUFFICIENT EQUITY IN THE PROPERTY

Section 362(d)(2) of the Bankruptcy Code provides a separate and independent basis for relief from the automatic stay. Stay relief shall be granted where (A) the debtor does not have any equity in such property; and (B) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). A creditor is entitled to relief from the automatic stay if the debtor is not making mortgage payments, and if there is insufficient equity in the property to adequately protect the creditor. *In re Martens*, 331 B.R. at 398. The test for equity under § 362(d)(2) compares all encumbrances against the property to the property's current value, whether or not all lienholders have requested relief from the stay. *In re Bowman*, 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000). Where there exists no equity in the property, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to defend against the motion. *In re Embassy Enterprises of St. Cloud*, 125 B.R. 552, 554 (Bankr. D. Minn. 1991). Because Chapter 7 is not a reorganization chapter, all the creditor need prove in a Chapter 7 case

is that the debtor has no equity in the collateral. 11 U.S.C. §362(d)(2)(A); *In re Gess*, 526 B.R. 798, 802 (B.A.P. 8th Cir. 2015) (relief from the stay properly granted under section 362(d)(2) where the value of a van was less than the amount owed on the loan and the debtors conceded that the van was not needed for an effective reorganization in a Chapter 7 case); *see also In re Martens*, 331 at 398 (relief properly granted where a Chapter 7 debtor failed to make any payments on the secured loan for nearly a year, there was insufficient equity in the property to adequately protect the creditor, and by definition the property was not necessary to a reorganization).

As evidenced by the verified facts submitted along with this motion, the Debtor has failed to make the payments required by the Note and the Mortgage. Factoring in holding and marketing costs, and standard realtor commission, there is likely no equity in the property. Accordingly, the Movant is entitled to relief from the automatic stay under § 362(d)(2).

## CONCLUSION

The facts set forth above establish adequate cause to support a lift of the automatic stay, and that the 14 day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived. Therefore, the Movant is entitled to an Order for relief from the stay to foreclose its Mortgage on the property and protect its security interest under state law.

Respectfully submitted,

Dated: October 15, 2019

Signed: */s/ Joseph M. Rossman*

James A. Dohnalek, Jr. – 0399206
Joseph M. Rossman - 0397070
jrossman@logs.com
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road, Suite 200
Burnsville, MN 55337
(952) 831-4060

19-41577 KHS

CERTIFICATE OF SERVICE

**STATE OF MINNESOTA** )
) SS
**COUNTY OF DAKOTA** )

I, Madeline Dopp, declare under penalty of perjury, say that on October 15, 2019, I mailed via U.S. Mail and CM/ECF emailed copies of the Notice of Hearing and Motion for Relief from Stay, Affidavit, annexed Memorandum of Law, Proposed Order for Relief from Stay, and Certificate of Service on the following interested parties at their last known address.

Service Via U.S. Mail

James D. Rose
840 Deerwood Drive
Chaska, MN 55318

Diane L. Rose
840 Deerwood Drive
Chaska, MN 55318

Service Via U.S. Certified Mail

Internal Revenue Service
Attn: Sara Mattson
PO Box 7346
Philadelphia PA 19101

Attorney General of the United States
United States Department of Justice
Attn: Civil Process Clerk
950 Pennsylvania Avenue NW, Room 4400
Washington, D.C. 20530

United States Attorney for the District of Minnesota
Attn: Civil Process Clerk
600 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415

State of Minnesota
Department of Revenue
Attn: Sara Westly
PO Box 64447
St Paul MN 55164 0447

Minnesota Attorney General
Attn: Civil Process Clerk
445 Minnesota Street, Suite 1400
St. Paul, MN 55101

U.S. Bank National Association
Attn: Bankruptcy Department
PO Box 108
Saint Louis, MO 63166-0108

Wells Fargo Bank, N.A.
MAC B6955-01B
Attn: Managing Agent
PO Box 31557
Billings, MT 59107-9900

Trott Law
25 Dale St. North
Saint Paul, MN 55102

Wilford, Geske, & Cook
7616 Currell Blvd Suite 200
Saint Paul, MN 55125-2296

Additional Copy(s) served electronically through the Court's ECF System or by first
class U.S. mail postage addressed to:

Attorney for Debtor:
Chad A Kelsch
Kelsch Law Firm PA
3350 Annapolis Lane N
Ste C
Plymouth, MN 55447

Trustee:
Julia A. Christians
Lapp, Libra, Thomson, Stoebner & Pusch,
One Financial Plaza, Suite 2500
120 South Sixth Street
Minneapolis, MN 55402

U. S. Trustee
1015 U.S. Courthouse
300 South 4th St.
Minneapolis, MN 55415

*/s/ Madeline Dopp*
Madeline Dopp

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In Re:

Case No. 19-41577 KHS

Diane L. Rose
James D. Rose

Debtors.

**ORDER GRANTING RELIEF**

This case is before the court on the motion of Specialized Loan Servicing, LLC, for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the records, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1. The motion for relief from stay is granted as follows.

2. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

Lot 5, Block 1, Deerwood Estates, Carver County, Minnesota

3. Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this order is effective immediately.

Dated: ______________________ _________________________________
United States Bankruptcy Judge